26 C.C.P.A.(Patents)
**In re MACALLUM et al.**
**Patent Appeal No. 4048.**

Court of Customs and Patent Appeals.
March 6, 1939.

Whittemore, Hulbert & Belknap, of Detroit, Mich. (Clarence B. Zewadski, of Detroit, Mich., and George A. Degnan, of Washington, D. C., of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting claims 2, 8, 9, 11, 12, 13, 14, 15 and 16 of appellants' application for a patent. Claims 8, 9, 13, 14, 15 and 16 are process claims. Claims 2, 11 and 12 are product claims. Process claims 6 and 7 were rejected by the examiner but allowed by the board.

Claims 2, 8 and 11 are illustrative of the claims on appeal and read as follows:

"2. A therapeutic agent comprising an extract of duodenal mucosa which when administered to mammals has the physiological property of stimulating the internal secretion of insulin from the pancreas gland said product being substantially free from proteins, peptones, choline and histamine having no effect on the blood sugar content of totally depancreatized animals and having little effect on the liberation of the external secretion of the pancreas."

"8. In the method of obtaining a therapeutic agent containing a hormone of the duodenal mucosa the step comprising the precipitation of a phosphate of calcium from a solution containing said hormone thereby obtaining said hormone adsorbed by the precipitate."

"11. A therapeutic agent comprising solid phosphate of calcium having adsorbed therein a hormone of the duodenal mucosa, said therapeutic agent being adapted for oral administration and having the physiological property of decreasing the blood sugar content in partially depancreatized animals while having no effect on totally depancreatized animals, said agent being substantially free from proteins and peptones having a negative Millon color test and having a negative effect on blood pressure and respiratory rate."

The references relied upon are: Moloney et al., 1,470,024, October 9, 1923; Berman, 1,854,502, April 19, 1932; Chemical Abstracts, Volume 19, 1925, Page 1883, Duodenal secretin and insulin by Penan and Simonnet; Reprint of applicants' article from the proceedings of the

Royal Society, 1932, entitled "The Relation of the Duodenal Mucosa to the Internal Secretion of the Pancreas—Pages 37 to 46; New & Nonofficial Remedies, 1931, Pub. by A. M. A., Page 303; Treatment of Diabetes with Secretin by Bainbridge & Beddard, Biochem, J., Volume 1, Pages 429 to 436, 1906; Presence of Insulin-like Substance in Gastric and Duodenal Mucosa by Ivy & Fisher, Amer. J. Physiol., Volume 67, Pages 445 to 453; The Action of Intestinal Extracts by Dixon & Wadia, Brit. Med. Journal, Volume 1, 1926, Page 820; Article by Heller in Arch. exp. Path. Pharmak, Vol. 145, 1929, Pages 343 to 358; Article by Heller in Wiener Klin. Wochenschrift, Volume 44, Page 476, April 10, 1931; On the Treatment of Diabetes Mellitus by Acid Extract of Duodenal Mucous Membrane by Moore, Eadie & Abram, Biochem. Journal, Volume 1, 1906, Pages 28 to 38.

Appellants' disclosure relates to a therapeutic agent alleged to be useful in the treatment of diabetes mellitus and a method of preparing the same. The product comprises an extract of duodenal mucosa which is adsorbed by solid phosphate of calcium and is alleged to have the characteristics, effects, functions or results which are observable in the claims. The process of making the product seems to be obvious from a reading of the method claims. Appellants' preparation is alleged to be "entirely suitable for oral administration."

In view of our conclusion it is not necessary to analyze all of the references cited.

The examiner rejected all of the product claims on the ground that the utility alleged for the product had not been convincingly established. The examiner also rejected the product claims, on appeal, for want of invention over the Heller reference of 1929.

In addition, the examiner rejected all of the process claims for lack of invention over the Ivy and Fisher reference in view of the patent to Moloney et al.

Further reasons assigned by the examiner in rejecting the process claims were that they were functional and did not properly point out the invention because there was no statement as to how the precipitation was accomplished.

The Board of Appeals did not agree with the examiner's ground of rejection that the product lacked utility but held the process patentable over any prior art before it when the process is specifically stated. The board affirmed the examiner in all other respects.

The board added further grounds for rejection of the process claims as follows:

"Claims 8 and 9 are broader than any invention described and tested since there is no evidence that calcium phosphate precipitated from any solution whatever would give a useful product even though the solution contained the desired *ho-mone*. The same is true of claims 15 and 16.

"Claims 13 and 14 are too broad because applicants describe only one precipitate and describe this precipitate as critically related to their invention. Furthermore, there is no evidence of test for several precipitates containing the hormone nor does it appear that all such precipitates are useful."

It is quite true that appellants' specification calls for the extraction of duodenal mucosa with a "suitable solvent," but it is likewise true that the only solvent disclosed by the application to be suitable is calcium acid phosphate. There is no evidence in the record, as stated by the board, that a useful product would result from the precipitation of calcium phosphate from *any* solution which contained the desired hormone. On this phase of the appeal we are of opinion that the case of In re Ferris, 90 F.2d 363, 364, 24 C.C.P.A., Patents, 1303, 1305, is squarely in point. In that case we said: "It will be noticed that the claims call broadly for the step of bringing a solvent into intimate contact with the oil without mentioning the particular solvent employed. It seems to us that appellant's invention as taught in the patent was the use of nitro-benzene or its equivalent belonging to the group of nitro compounds or mixtures, and that appellant now seeks to acquire a patent with claims which involve the use of any kind of solvent which would do the work, regardless of whether or not it is of the type disclosed. The appealed claims themselves are so broad in calling for a solvent as to amount to asking a monopoly on treating oils for the purposes stated with any material which has a solvent characteristic. The claims are really so broad that they state only the desired result and say that it can be done with a solvent."

We are, therefore, of opinion that the aforesaid added reason for rejection by the board of process claims 8, 9, 15 and 16, on the grounds that the said claims are broad-

er than any invention described in the application, was proper and we so hold.

As to appealed process claims 13 and 14 the reason for rejection added by the board was that the precipitate is too broadly stated in these claims. In both of these claims the following appears: " * * *, the steps of precipitating in a solution containing the insular hormone of the duodenal mucosa a precipitate which adsorbs said hormone and separating said precipitate and adsorbed hormone from the solution."

■ It is clear that the term "a precipitate" is broad enough to include any or all precipitates which can produce the result desired. The sole example of a precipitate disclosed in the specification of appellants is phosphate of calcium. Since claims 13 and 14 do not state that the precipitate is phosphate of calcium they are certainly broader than the alleged invention and were properly rejected by the board for that reason.

With respect to claims 2 and 12 the board said: "Claims 2 and 12 describe the extract by its effects only. We do not believe these claims point out the invention as required by law and, as indicated above, extracts of this character have been known for years, although the prior art does not point out that they are free from all the substances mentioned in claim 2 and Heller clearly indicates the presence of histamine in his extract and the absence of proteins. The mere absence of certain impurities does not render an old extract patentable unless possibly the absence of these impurities is a critical feature of the invention, which does not appear to be the case here."

Extracts of duodenal mucosa containing its hormone are shown to be old in the art of pharmacology. A careful examination of the Heller reference of 1929 shows that Heller prepared an extract of duodenal mucosa having substantially the same properties as the product shown by claims 2 and 12 herein. The preparation of Heller had the property of reducing the blood sugar level and even when orally administered to dogs which had not been depancreatized, it had this effect.

■ We are of opinion that the extract of Heller was not of the nature of insulin as contended by appellants since Heller shows that insulin orally administered is destroyed by the ferments in the intestines and has no effect on the blood sugar level when so administered. Neither can we agree with the contention of appellants that the product of Heller is of the nature of secretin, as Heller evidently distinguished secretin from his extract, saying "The active principle is therefore found, *just the same as for secretin,* in the duodenum and the proximal jejunum." [Italics supplied]

■ The properties and tests of Heller indicate that his product is substantially protein free, although some histamine is present. In view of Heller it appears to us that if there is any difference between that product and the extract of appellants it is merely one of slight degree of purity. We do not believe this difference of degree in purity renders the product of appellants patentable, for the reason that the products of appellants and Heller do not differ in kind nor does appellants' product have a new utility not possessed by Heller. In re Merz, 97 F.2d 599, 25 C.C.P.A., Patents, 1314.

■ Claim 11 discloses a composition of matter comprising solid phosphate of calcium and a hormone of duodenal mucosa. If this combination were new the claim might be allowable. But the application discloses that this combination exists naturally in the duodenum and it is therefore old. It will be observed that the quantity of phosphate of calcium defined by the claim cannot be said to be different from the quantity found in nature. Therefore, as a composition of matter claim it is not allowable, as was properly held by the board.

For the foregoing reasons the decision of the Board of Appeals is affirmed.

Affirmed.