Giulio NATTA, Piero Pino and Georgio Mazzanti, ex rel. Interference 89,634, Appellants,

v.

Alex ZLETZ and Standard Oil Company of Indiana, Appellees.

No. 16997.

United States Court of Appeals Seventh Circuit.

Dec. 19, 1968.

---

**100**

Kenneth J. Burns, Jr., Raymond, Mayer, Jenner & Block, Chicago, Ill., Edward S. Irons, Mary Helen Sears, Irons, Birch, Swindler & McKie, Washington, D. C., for appellants.

William R. Jentes, Fred H. Bartlit, Jr., Elsie C. Spears, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for appellees; Arthur G. Gilkes, Ralph C. Medhurst, Chicago, Ill., John Kelton, Watson, Leavenworth, Kelton & Taggart, New York City, of counsel.

Before CASTLE, Chief Judge, KNOCH, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

In September 1958, the United States Patent Office instituted Interference No. 89,634 to determine which of four applicants for a patent first invented a plastic product known as solid polypropylene. Defendants Zletz and his assignee, Standard Oil Company of Indiana ("Standard"), and other junior parties to the Interference introduced evidence before the Board of Patent Interferences in an attempt to advance their invention dates prior to the date to which plaintiffs ("Natta"), as the senior parties to the Interference, are presumptively entitled. See 37 C.F.R. § 1.257(a). In June 1966, Natta filed an ancillary action under 35 U.S.C. § 24 seeking the production of documents of defendants, pursuant to

Rule 34 of the Federal Rules of Civil Procedure, for use in Natta's rebuttal case before the Board. In November 1966, the production motion was denied on jurisdictional grounds, resulting in reversal by this Court. See 7 Cir., 379 F.2d 615.

During the subsequent proceedings in the district court, defendants made numerous documents available to Natta. However, in May 1968, the district court entered an order refusing access to three categories of defendants' documents:

1. Documents assertedly relating to polyethylene rather than polypropylene. These documents were inspected *in camera* and *ex parte* by the district judge, who concluded that they constituted valuable trade secrets and were neither relevant nor likely to lead to the discovery of relevant evidence.[1]

2. Two memoranda relating to foreign patent applications, also inspected *in camera* without counsel present. Again the district court concluded that they were not relevant and not likely to lead to relevant material.

3. Documents dated subsequent to October 15, 1954, the date of Zletz's application for a patent on solid polypropylene. The court stated that they "are not within the proper scope of discovery ancillary" to the Interference.

We now set aside this order as unduly restrictive and not in accord with the broad type of discovery and duty of full disclosure contemplated by the patent laws, including 35 U.S.C. § 24. In re Natta, 388 F.2d 215, 217 (3d Cir. 1968); Natta v. Hogan, 392 F.2d 686, 691 (10th Cir. 1968). The maximum amount of evidence should be available to the Patent Office for its sifting of the interference issues.

As to the polyethylene documents, the record shows that Standard

---

1. The *in camera* review originated in a *sua sponte* ruling of the trial judge. An earlier protective order, entered by agreement of the parties, had provided for inspection by Natta's counsel, but subject to various restrictions.

relied on documents mentioning polyethylene in its case in chief before the Board of Patent Interferences. Therefore, in rebuttal there, Natta should be entitled to respond to Standard's case with evidence of similar scope. Even the district court recognized that complete disclosure with respect to polypropylene would necessarily involve polyethylene and that many of the withheld documents reflect "a very substantial * * * correlation" between the two substances. Only a limited number of documents is involved, and those bear on the interelation of experiments on polypropylene and polyethylene during the period involved. Since Standard is relying upon some polyethylene material "to carry back the date of conception or reduction to practice prior to the date" of Natta, these documents are relevant or may lead to relevant matters within the purview of Rules 26(b) and 34 of the Federal Rules of Civil Procedure (see Prosperity Co. v. St. Joe Machines, Inc., 2 F.R.D. 299, 300 (W.D.Mich.1942)) and may not be withheld on the grounds of irrelevancy.[2]

In addition to withholding the polyethylene documents on the ground of irrelevancy, after looking at them, the district court denied inspection to Natta on the ground that they "constitute valuable trade secrets." Natta's counsel of course had no opportunity to rebut Standard's trade secrecy claims. In Dennis v. United States, 384 U.S. 855, 874–875, 86 S.Ct. 1840, 1851, 16 L.Ed. 2d 973, a case involving grand jury minutes, the Supreme Court expressed its criticism of an *in camera* and *ex parte*

inspection by a trial judge, stating in language applicable here:

"Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."[3]

Although there is no privilege against discovery of trade secrets (4 Moore's Federal Practice (2d ed.) ¶ 34.15 at p. 2519 and cases cited), Standard was entitled to protection against any unnecessary disclosure. As in Carter Products, Inc. v. Eversharp, 360 F.2d 868, 872, 873 (7th Cir. 1966), Standard had no absolute right to refuse to divulge the polyethylene information on trade secrecy grounds in view of the public interest in seeking the truth about who is entitled to this patent.[4] We recognized there that any prejudice to the owner of trade secrets caused by disclosure under Rule 34 could be obviated by a protective order under Rule 30(b). Therefore, it is our conclusion that Natta's counsel may inspect the polyethylene documents submitted to the district court in envelopes II, III and V subject to the protective order entered by the district court on September 14, 1967, to be supplemented by a district court clause specifically forbidding Natta's counsel to make any disclosure to Natta, its assignees, or any third parties. Under the protective order, the information dis-

2. Rule 34, the documentary inspection rule, incorporates Rule 26(b) by reference. That rule permits discovery as to any unprivileged matter, even if inadmissible, as long as it is relevant or "reasonably calculated to lead to the discovery of admissible evidence."

3. *In camera* inspection is of course warranted in appropriate instances. United States v. Fannon, 403 F.2d 391, 394 (7th Cir. 1968).

4. See also Natta v. Hogan, 392 F.2d 686, 691 (10th Cir. 1968); Melori Shoe Corp. v. Pierce & Stevens, Inc., 14 F.R.D. 346, 347 (D.Mass.1953); United States v. Lever Brothers Co., 193 F.Supp. 254 (S.D.N.Y.1961); appeal dismissed, 371 U.S. 207, 83 S.Ct. 304, 9 L.Ed.2d 269, certiorari denied, 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272.

closed may only be used in Interference 89,634. Such an order should protect Standard from the unfair use of any trade secrets. See Turmenne v. White Consolidated Industries, Inc., 266 F. Supp. 35, 37 (D.Mass.1967); Paul v. Sinnott, 217 F.Supp. 84, 86 (W.D.Pa. 1963); In re Natta, 264 F.Supp. 734, 742 (D.Del.1967), affirmed, 388 F.2d 215 (3d Cir. 1968); 4 Moore's Federal Practice (2d ed.) ¶ 34.19[2], p. 2536, and cases cited. As in General Foods Corp. v. Beu, 86 U.S.P.Q. 319 (W.D.N.Y.1950), Natta counsel may not disclose any information derived from this inspection outside the Patent Office. During the presentation of Natta's rebuttal case before the Patent Office, Standard can secure further protection against any revelation of its trade secrets. See 37 C.F.R. §§ 1.14 and 1.243.

█ Two Standard memoranda dealing with the possible filing of foreign patent applications were also withheld by the district court on relevancy grounds. However, those memoranda may bear "on the factual issue of 'invention'" by Standard. Cf. American Infra Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977, 987 (8th Cir. 1966), certiorari denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144; General Instrument Corporation v. Hughes Aircraft Co., 399 F.2d 373 (1st Cir. 1968). Standard does not deny that they relate to the subject matter covered in certain Standard patent applications placed in issue in Interference 89,634. While we hold that these documents are sufficiently relevant to compel inspection, the question of their admissibility is for the Patent Office. In re Natta, 388 F.2d 215, 219 (3d Cir. 1968).

█ Finally, the district court selected October 15, 1954, the date of Zletz's application, as the cut-off date for discovery. Since it is well settled that events following the date of a patent application may cast doubt on the patentability of the product (Charles Pfizer & Co. v. Federal Trade Commission, 401 F.2d 574 (6th Cir. 1968); In re Natta,

388 F.2d 215, 220 (3d Cir. 1968); Fang v. Hankins, 399 F.2d 262, 269 (CCPA 1968); Heard v. Burton, 333 F.2d 239, 242, 51 CCPA 1502 (1964); Radio Corp. of America v. Philco Corp., 275 F.Supp. 172, 226 (D.N.J.1967)), the cut-off date selected was improper. Subsequent documents may bear on events prior thereto and also on any actual reduction to practice by Standard. They should be produced if they are in the categories already sought by Natta.

In the interest of obviating a third procedural appeal, counsel for both sides should endeavor to complete this overdue discovery with dispatch, thus enabling the Board of Patent Interferences to dispose of this matter without further ancillary delays.

Reversed and remanded.