See also, 3 Cir., 410 F.2d 187, D.C., 48 F.R.D. 319.

**In re HOGAN et al., Movant.**

**HOGAN et al.**

**v.**

**ZLETZ.**

**v.**

**BAXTER et al.**

**v.**

**NATTA et al.**

**Misc. No. 54.**

United States District Court,
D. Delaware.

Feb. 25, 1970.

**946**

C. Waggaman Berl, Jr., of Booker, Leshem, Green, Shaffer & Berl, Wilmington, Del., and Robert L. Austin, of Pendleton, Neuman, Seibold & Williams, Chicago, Ill., of counsel, for the Party Hogan and another.

Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, Del., and Edward L. Irons and Mary Helen Sears, of Irons, Stockman, Sears & Santorelli, Washington, D. C., of counsel, for the Party Natta and another.

Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, Del., and John T. Kelton, New York City, of counsel, for the Party Zletz.

Walter K. Stapleton, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Roger Hines, Legal Department, E. I. duPont de Nemours & Company, Wilmington, Del., for the Party Baxter and another.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Chief Judge.

This Court's jurisdiction is invoked under 35 U.S.C. § 24 to make certain rulings regarding taking of testimony in Wilmington, Delaware, in Patent Interference 89,634 pending in the United States Patent Office. The Party Hogan calls on the Court to compel answers to certain questions put to Dr. Roberto Pirani, a witness of the Party Natta, on cross examination, and to dissolve an order impounding certain testimony of Dr. Giuseppe de Varda, also a witness of the Party Natta, taken on cross examination.

Although the Court's determination of these motions turns on application of rules of evidence common to civil actions in general, some understanding of the posture of the interference is helpful. The real parties in interest are the corporate assignees of the nominal parties to the interference, namely, Phillips Petroleum Company, Standard Oil of Indiana, E. I. du Pont de Nemours & Company, and Montecatini Edison S.p.A. respectively. For purposes of this opinion, however, the parties will be referred to as they are identified in the caption. The Patent Office has assigned the following order of seniority:

(1) Hogan
(2) Zletz
(3) Baxter .
(4) Natta, the senior party

All the junior parties have taken testimony-in-chief. Baxter requested and obtained the right to reopen its case in chief, on the ground that documents subsequently discovered negated Natta's right to its assigned priority date in that they showed that the party who filed the American application was not identical to the party who had filed Natta's earlier Italian application. Natta's seniority had been assigned on the basis of its earlier filed Italian application. 35 U.S.C. § 119.

At the close of Baxter's testimony on what will be called the discrepancy of inventorship issue, Natta was granted a special testimony time to file evidence regarding a multitude of documents recently produced and to rebut the Baxter evidence on the discrepancy issue. The two witnesses whose testimony has caused the dispute herein were brought to Wilmington from Italy by Natta to offer evidence in its behalf.

At the opening of Dr. Pirani's deposition, counsel for Natta stated:

"* * * the Patent Office granted certain motions of the Party Baxter et

al. to reopen their testimony and to present certain alleged evidence on the question of an alleged inconsistency in inventorship between application 24,-227 of June 8, 1954, and United States application Serial Number 514,099 involved in this interference. And this testimony of Dr. Pirani is taken pursuant to the Patent Office Order in rebuttal to the du Pont evidence, and for no other purpose, and will be used by Natta in this interference or elsewhere for no other purpose." Pirani deposition, Interference Record pp. 3408–3409.

A similar representation was made in the record by Natta's counsel at the commencement of the Dr. de Varda deposition.

Counsel's statements of course do not control the scope of his examination, but the Court has examined the transcript of the direct testimony of Dr. Pirani and finds both the questions and answers to have been limited as counsel represented. The examination was directed to the discrepancy of inventorship issue and to no other.

At the close of Dr. Pirani's direct testimony, counsel for Baxter and Zletz cross examined him and likewise limited themselves to the discrepancy of inventorship issue. Counsel for Natta made various objections to the questions asked, but at no time did he instruct Dr. Pirani not to answer.

During the cross examination by Hogan's counsel, however, the witness was asked to identify a number of documents recently produced from the files of Natta. Counsel for Natta made objections and instructed Dr. Pirani not to identify the documents nor to answer questions regarding them. He stated that the documents in question and the attempted interrogation referred to experiments conducted in 1955 or later by Natta, the impetus for which had indeed come from publications by Hogan, and that they were irrelevant to the discrepancy of inventorship issue which had been the sole area of inquiry on direct examination. Counsel for Hogan moved in this Court for an order directing the witness to answer the questions and to identify the documents.

The Court has examined the documents presented by Hogan and finds that they are irrelevant to the discrepancy of inventorship issue. They deal with tests, data and analyses relating to various materials developed by Hogan, conducted and compiled by Natta. Counsel for Natta is correct in his assertion that although the information might be quite relevant to Hogan's case in chief, it bears no relation to the discrepancy of inventorship issue and is beyond the scope of the direct examination.

■ The so-called "Federal Rule" regarding the limits of cross examination is a rigid one, and is concededly the object of wise and weighty criticism. VI Wigmore, Evidence (3rd ed.), §§ 1885–1895. It confines cross examination to matters raised by the direct examination, and severely limits the range of inquiry open to cross examining counsel. The courts have found ways to avoid its severity when it threatens manifest injustice. VI Wigmore § 1890. Hogan urges the Court to make an exception in the interest of justice in this case.

■ It is far from clear to the Court, however, that injustice would not be done by making the exception. Patent interference proceedings are designed to force parties assigned a junior position to attack the status of the senior party. The junior parties have the burden of proving that their dates of invention are earlier than that of the senior party. For that reason junior parties are given two testimony periods, one for the case in chief and one for rebuttal of evidence presented by the senior party. The senior party has only one period, during which he must present both his testimony in chief and his rebuttal of the case of each of the junior parties. Siedmon and Horwitz, Patent Office Rules and Practice § 2512. This procedure cannot operate fairly if junior parties are permitted to present evidence proving their affirmative cases on cross examination

of the senior party's witnesses. Such evidence would not be subject to rebuttal by the senior party unless he could persuade the Patent Office to grant surrebuttal time, a procedure generally reserved for exceptional circumstances.

██ If Hogan desired to present newly discovered evidence in his case in chief, he could have petitioned the Patent Office to reopen his testimony time, as Baxter did. He should not be permitted to take advantage of his opportunity to cross examine Natta's witnesses to serve his affirmative case. Even if the documents were relevant as rebuttal of Natta's case, to permit their identification and introduction on cross examination here would in effect remove the strict limitations on testimony periods imposed by the Patent Office.

Whether or not the Patent Office would permit surrebuttal by Natta or would admit the testimony over Natta's objection in its final deliberations is not before this Court. It notes, however, a disturbing lack of clarity in the relationship between 35 U.S.C. § 24 and the Patent Office Rules. The statutory section by its terms does not confer jurisdiction on the District Courts except when a subpoena is served by the Clerk. It makes applicable the federal rules of civil procedure, but seemingly only as they apply to compelling the attendance of witnesses and the production of documents. That a District Court has jurisdiction to control the conduct of depositions in patent interferences when no subpoena or process has issued from the Clerk of that district is not obvious from the statute.

The role of the District Courts in these matters is further clouded by the extensive rules established by the Commissioner for taking affidavits and depositions in cases in the Patent Office. 35 U.S.C. § 23. The rules clearly provide means of making and preserving objections to testimony taken by deposition, and contemplate determinations of admissibility by the Patent Office only when all testimony has been taken. If the District Courts are to be available to

the parties in patent interferences for play by play decisions on the conduct of depositions the Commissioner's rules become almost irrelevant. On the other hand, the Commissioner and his examiners are not available in the hinterlands to settle disputes and some local control is essential to insure fairness to the parties in light of the limited testimony periods.

██ Courts have entertained controversies such as the instant one, and have decided whether refusals to answer were proper. Application of Rogoff, 94 F. Supp. 377 (M.D.Pa.1951), reh. den. 95 F.Supp. 467 (1951), Katzman v. Georgiev, 15 F.Supp. 769 (S.D.N.Y.1936). Apparently no challenge was made to their jurisdiction or authority, but it cannot be assumed that the courts in those cases would have exercised a jurisdiction they did not possess. This Court feels that they are sufficient authority for the exercise of its jurisdiction herein. For the reasons stated, the motion to compel answers by the witness Pirani is denied.

At the time set for the hearing of Hogan's motion to compel answers by Dr. Pirani, Dr. Pirani had returned to Italy. Counsel for Natta had stipulated, however, that he would return if this Court ruled that he must respond to Hogan's questions.

On the date set for the hearing of Hogan's motion relative to the examination of Dr. Pirani, Dr. de Varda was in Wilmington for his deposition. It was represented to the Court, on the morning his deposition was to be taken, that on cross examination of Dr. de Varda, Hogan would attempt to interrogate him on the same and other similar documents submitted at the Pirani deposition, and that Natta would make similar objections. Being assured that Hogan's cross examination would be comparatively short, and in order to expedite the de Varda deposition, the Court ordered the questions to be answered, the documents to be identified, and the testimony thereafter to be impounded in this court pending final disposition of the matter.

Subsequently Natta filed a motion to make the Impounding Order permanent and final and Hogan filed a counter motion to dissolve the impounding order.

An examination of the documentary evidence adduced on cross examination of Dr. de Varda reveals that it is not relevant to the discrepancy of inventorship issue, the sole issue for which he was called to testify. The documents are the same documents already discussed in connection with Dr. Pirani's deposition or documents which fall in the same category. Therefore the Court finds the documents identified and testimony elicited from de Varda by Hogan on cross examination inadmissible. The motion of Hogan to dissolve the impounding order is denied, and the motion of Natta to make final and permanent the impounding order is granted.

Submit order.